IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TEVAUGHN DARLING, ) | Case No. 1:18-CV-1743 |
| ) | |
| Petitioner, ) | JUDGE CHRISTOPHER A. BOYKO |
| ) | |
| v. ) | MAGISTRATE JUDGE |
| ) | THOMAS M. PARKER |
| AL LAZAROFF, Warden, ) | |
| ) | |
| Respondent. ) | **REPORT & RECOMMENDATION** |
| ) | |

Petitioner, Tevaughn Darling, an Ohio prisoner serving a fourteen-year prison term after he pleaded guilty to conspiracy, drug trafficking, having weapons under disability, possessing criminal tools, and tampering with evidence, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Darling claims that his convictions and sentences in *State v. Darling*, Cuy. Cty. Ct. Comm. Pl. Case No. CR-15-602351-A, were obtained in violation of his Sixth Amendment right to choice of counsel "whe[n] the office of the prosecuting attorney interfered with this right and required that petitioner be represented by a court-appointed counsel." ECF Doc. 1 at 5. Respondent, Warden Al Lazaroff[1], filed a return of writ on October 5, 2018. ECF Doc. 6. Darling filed his traverse on October 26, 2018. ECF Doc. 7. This matter is before me by an

---

[1] Al Lazaroff was warden of Mansfield Correctional Institution of the Ohio Department of Rehabilitation and Correction, the facility at which Darling was housed when he filed his petition. ECF Doc. 1 at 1. Darling is now housed at the Ohio State Penitentiary. https://appgateway.drc.ohio.gov/OffenderSearch/ Search/Details/A682797 (last visited Feb. 19, 2020). Richard A. Bowen, Jr. is warden of that institution. https://drc.ohio.gov/osp (last visited Feb. 19, 2020).

automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Darling's petition.[2] ECF Doc. 3. Because the court lacks jurisdiction to entertain Darling's claim under 28 U.S.C. § 2254(a), I recommend that the Darling's claim be DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION and that his petition be DENIED.

## I.     State Court History

### A.     State Trial Court

#### 1.     Original Case, No. CR-15-599133

On September 23, 2015, a Cuyahoga County, Ohio grand jury indicted Darling on: five counts of drug trafficking in violation of Ohio Rev. Code § 2925.03(A)(1); one count of drug trafficking in violation of Ohio Rev. Code § 2925.03(A)(2); one count of drug possession in violation of Ohio Rev Code § 2925.11(A); one count of possessing criminal tools in violation of Ohio Rev. Code § 2923.24(A); one count of tampering with evidence in violation of Ohio Rev. Code § 2921.12(A)(1); and one count of conspiracy to traffic drugs in violation of Ohio Rev. Code § 2923.01(A)(1). ECF Doc. 6-1 at 5-11. Specifically, the indictment alleged that, throughout 2015, Darling, along with Duane Washington, Erica Crawford, and Terri Buckner, conspired to traffic and did traffic heroin. *Id.* at 5-11. Darling also was alleged to have possessed two cell phones for use in his trafficking scheme and made efforts to destroy or conceal evidence related to it. *Id.* at 10. Darling pleaded not guilty and retained attorneys Ralph DeFranco and Marcus Sidoti to represent him. *Id.* at 12; *see also* Cuy. Cty. Ct. Comm. Pl. Case No. CR-15-599133-A, Journal Entry on Oct. 27, 2015 (noting that "counsel Marcus S. Sidoti & Ralph DeFranco [were] present" on Darling's behalf).

---

[2] Chief Judge Patricia A. Gaughan also issued a differentiated case management initial order for administrative track cases reflecting the automatic order of reference. ECF Doc. 2.

On November 6, 2015, the state filed a "notice of conflict and motion to disqualify all co-defendants' attorneys." *Id.* at 14-51. The state alleged that Darling had paid for and was controlling his co-defendants' attorneys, and that he planned to have an attorney convince Washington to "take the fall" for Darling, Buckner, and Crawford. *Id.* at 14. The State also alleged that DeFranco had unwittingly become a part of Darling's scheme to "thwart justice" by: (1) receiving funds to distribute the co-defendants' lawyers; and (2) representing and securing release from jail for Adam Ladson with knowledge that Ladson would be killed for his role as a witness against Douglas Shine[3] (a Darling associate). *Id.* at 15, 22-24. As support for its allegations, the state pointed to: (1) recorded phone calls in which Darling noted that he paid for the five defense lawyers involved in the case and directed their conduct; (2) a diary entry to tell Washington to write a statement to take the fall for the drug trafficking offenses and exonerate Darling, Buckner, and Crawford; (3) letters directing Washington to select a lawyer from Darling's list and encouraging him to take responsibility for the charges; (4) a letter to Buckner directing her to have her lawyer see Darling; (5) Darling's ledger of payments to DeFranco, Sidotti, and the lawyers for Buckner and Crawford; (6) a letter to Buckner directing her to contact Jeff Richardson (Washington's attorney) to "put some money on my books;" and (7) recorded phone calls Darling made to attorneys and other members of his drug trafficking organization through other inmates' PINs or through third-party relay. *Id.* at 29-33, 42-51. The state also said that Richardson refused to disclose to the state or to *Washington* who had paid him

---

[3] Regarding Shine's relationship to Darling, the state said that Shine shot Stefon "Ching" Robinson (a member of the Loyal Always gang) 13 times as retribution after Robinson and Deandre "Prada" Gordon robbed Darling. ECF Doc. 6-1 at 17-19. Shine later feuded with other members of the Loyal Always gang, culminating in a February 2015 mass shooting at the Chalk Linez Barbershop. *Id.* at 19-22. Ladson witnessed the barbershop shooting and told police that Shine was the shooter. *Id.* at 22-23. The state said that "[i]f Attorney DeFranco was paid by Darling to represent Ladson, and the evidence show[ed] that Darling was part of the conspiracy to kill Ladson, th[at fact] would cause irreparable damage to Attorney DeFranco's standing at the trial." *Id.* at 24.

3

to represent Washington. *Id.* at 29. The state asked the court to hold an evidentiary hearing to determine: (1) whether Darlings' co-defendants consented to – or even could consent to – the conflict in being represented by lawyers whom Darling had paid with the intent to fashion a defense that protected Darling by putting the blame on Washington; (2) whether Darling or someone under Darling's control paid Richardson to represent Washington; and (3) whether DeFranco should be disqualified from representation when his "standing at trial" could be damaged if he "was paid by Darling to represent Ladson, and the evidence show[ed] that Darling was part of the conspiracy to kill Ladson." *Id.* at 24, 33-41.

   On November 9, 2015, DeFranco filed a "motion to withdraw as counsel." *Id.* at 53-55. DeFranco repudiated the state's insinuations that he facilitated payments to Darling's co-defendants' lawyers or was a member of Darling's "enterprise," and said that he had merely represented Darling in his legal matters. *Id.* at 53-54. DeFranco also rebuked the insinuation that he had anything to do with Ladson's killing, but asserted that he had represented Ladson to have his bail reduced and work privileges instated at Ladson's request and with payment by Ladson and his family. *Id.* at 53-54. Nevertheless, DeFranco said that he "underst[ood] the State's observations regarding the potential conflict of interest with [Ladson and Darling] having been represented by [him] in the past." *Id.* at 54-55. Thus, DeFranco asked that the court remedy "[a]ny suggestion of impropriety or conflict" by allowing him to withdraw as counsel and "to allow the State of Ohio to proceed ethically and in the best interest of the defendant." *Id.* at 55. The state trial court granted DeFranco's motion and noted that Attorney Sidotti remained as counsel of record for Darling. *Id.* at 57. And the state withdrew its motion to disqualify counsel, as to Darling, Buckner, and Crawford but not as to Washington. *Id.* at 59.

4

On January 28, 2016, the state moved to dismiss without prejudice Case No. CR-15-599133-A because Darling had been re-indicated in a superseding indictment in Case No. CR-15-602351-A. *Id.* at 114. The trial court granted the state's motion and dismissed Case No. CR-15-599133-A. *Id.* at 116.

### 2. Superseding Case, No. CR-15-602351-A

On January 13, 2016, a Cuyahoga County, Ohio grand jury indicted Darling on: one count of conspiracy to traffic drugs in violation of Ohio Rev. Code. § 2923.01(A)(2); twelve counts of drug trafficking in violation of Ohio Rev. Code § 2925.03(A)(1); one count of drug possession in violation of Ohio Rev. Code § 2925.11(A); one count of having weapons under disability in violation of Ohio Rev. Code § 2923.13(A)(3); one count of possessing criminal tools in violation of Ohio Rev. Code § 2923.24(A); and one count of tampering with evidence in violation of Ohio Rev. Code § 2921.12(A)(1). ECF Doc. 6-1 at 62-96. the indictment alleged that, throughout 2015, Darling, along with Washington, Crawford, Buckner, Laurie Jones, and Rodney Willis, conspired to traffic and did traffic in heroin. *Id.* at 62-109. On January 19, 2016, the court declared Darling indigent and appointed the public defender as counsel. *Id.* at 110.

On April 25, 2016, Darling pleaded guilty to: the single count of conspiracy; six counts of drug trafficking, including one count that had an attached firearm specification; the single count of having weapons under disability; the single count of possessing criminal tools; and the single count of tampering with evidence. ECF Doc. 6-3 at 3-6, 16-25. To ensure that Darling's plea was knowing, voluntary, and intelligent, the court conducted a plea colloquy pursuant to Ohio Crim. R. 11(C)(2). *Id.* at 6-16.

During his change of plea hearing, Darling stated that he was 37 years old, had a GED, was a U.S. citizen, did not have any difficulty reading or writing, and was not under the

5

influence of any drugs, alcohol, or medicines that could affect his thinking. *Id*. at 6-7. He said counsel explained everything to him and answered all of his questions, and he was satisfied with counsel's representation. *Id.* at 7. He admitted that he understood that by pleading guilty he waived his rights to: a jury or bench trial; subpoena or call witnesses; cross-examine the state's witnesses; the burden for the state to prove his guilt by evidence beyond a reasonable doubt; and to remain silent and not have his silence used against him. *Id.* at 7-9. The court described, and Darling stated that he understood, the mandatory and potential prison terms, fines, and post-release control that could be imposed for each of the charges against him. *Id.* at 9-13. And Darling said that no one had promised him anything or threatened him in any way in order to coerce his change of plea – other than the terms in his plea agreement, which included the dismissal of the other counts against Darling and an offer of misdemeanor pleas for his remaining co-defendants (Buckner and Crawford). *Id.* at 5-6, 13-14. The court found that Darling's plea was knowing, voluntary, and intelligent; found Darling guilty on the counts pleaded to; and nolled the remaining counts against him. ECF Doc. 6-1 at 167; ECF Doc. 6-3 at 25-26.

On August 28, 2019, the trial court sentenced Darling to an aggregate prison sentence of 14 year to be followed by 3 years' post-release control and a total fine of $37,500. ECF Doc. 6-1 at 175-76; ECF Doc. 6-3 at 48-53. During the sentencing hearing, Darling – in additional to listing several other grievances about the investigation into him and his co-defendants and his 230 days in solitary confinement – asserted that the state had improperly interfered with his representation by DeFranco by: (1) precluding him from contacting anyone outside the jail to pay his attorney's fees; and (2) "assassinating [DeFranco's] character with some things that he would never do, almost shatter[ing] his career with false accusations." ECF Doc. 6-3 at 40, 42.

6

### B. Direct Appeal, Case No. CA-16-104517

On May 24, 2016, Darling, through counsel, appealed to the Ohio Court of Appeals. ECF Doc 6-1 at 178. On appeal, Darling raised six assignments of error, two of which are relevant to his petition[4]:

1. The State deprived Appellant of retained counsel of choice and due process of law by filing groundless objections to the representation of his retained counsel, thereby intimidating his retained counsel and causing his retained counsel to withdraw. Sixth and Fourteenth Amendments, Constitution of the United States; Article I, Section 10, Constitution of the State of Ohio.

2. Appellant was denied his right to the effective assistance of counsel when his retained counsel gave in to intimidation by the State and abandoned his client by withdrawing from the case.

ECF Doc. 6-1 at 186, 204-12. Specifically, Darling asserted that the state did not fulfill its burden to establish that concerns about the integrity of the judicial process justified disqualification of DeFranco. *Id.* at 206-09. Rather, the state merely pursued "an unscrupulous campaign of intimidation which included groundless allegations of conflicts of interest and wrongdoing," including the "utterly outrageous" implication that DeFranco helped set up the murder of another client (who was a witness in case in which Darling was not indicted) for Darling's benefit. *Id.* at 206-08. Further, Darling asserted that – even if the State could prove that Darling paid for his co-defendants' attorneys and encouraged Washington to take responsibility for the charged offenses – the state could not show how that conduct created a conflict of interest for DeFranco. *Id.* at 207, 209. Finally, Darling argued that DeFranco's "cut and run response" to the state's motion to disqualify was an "unjustifiable abandonment" of the case and amounted to constitutionally ineffective assistance. *Id.* at 211.

---

[4] Darling's other assignments of error challenged whether his guilty plea was knowing, voluntary, and intelligent; the consecutive sentences imposed; and the court's decision to impose fines. ECF Doc. 6-1 at 186-87, 212-20.

7

On September 14, 2017, the Ohio Court of Appeals affirmed Darling's convictions and sentences. ECF Doc. 6-1 at 284-302. The court of appeals noted that Darling's choice-of-counsel and ineffective-assistance claims were related to his dismissed case, No. CR-15-599133, which was not designated in his notice of appeal. *Id.* at 289-90. Nevertheless, the state waived, by responding to those assignments of error, any challenge to the defects in the notice of appeal. *Id.* at 290. Addressing the claim, the Ohio Court of Appeals said:

> {¶ 10} Here, the state responded to, and was therefore clearly apprised of, Darling's first two assignments of error.
>
> {¶ 11} In his first assignment of error, Darling argues the state deprived him of his "retained counsel of his choice" by filing "groundless objections" in its motion to disqualify counsel "thereby intimidating his retained counsel to withdraw." Darling argues in his second assignment of error that his retained counsel's withdrawal "denied him his right to the effective assistance of counsel," amounting to "abandon[ment]."
>
> {¶ 12} We find that Darling waived these challenges by pleading guilty. "It is well settled that 'a guilty plea waives all nonjurisdictional defects (other than errors affecting the validity of the guilty plea) in the prior proceedings.'" *State v. Lewis,* 8th Dist. Cuyahoga No. 102939, 2015-Ohio-5267, ¶ 16, quoting *State v. Moore,* 2d Dist. Montgomery No . 22365, 2008-Ohio-4322, ¶ 12. Here, Darling does not assert that his retained counsel's withdrawal affected the validity of his plea, nor does he argue ineffective assistance of counsel as to his assistant public defender who represented him at the time of his plea.
>
> {¶ 13} A guilty plea waives all constitutional claims, apart from challenging the constitutionality of the plea itself. *State v. Malenda,* 8th Dist. Cuyahoga Nos. 104736, 104829, 2017-Ohio-5574, ¶ 9, citing *State v. Thompson,* 8th Dist. Cuyahoga No. 104322, 2016-Ohio-8310, ¶ 4. Darling's first assignment of error does not relate to the constitutionality of his plea itself, but rather argues a deprivation of his right to choice of counsel in the first case, CR-15-59913-A, which was eventually dismissed without prejudice.
>
> {¶ 14} The United States Supreme Court has stated:
>
>> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise

> independent claims relating to the deprivation of constitutional
> rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson,* 411 U.S. 258, 267, 93 S. Ct. 1602, 36 L.Ed.2d 235 (1973). Darling waived the Sixth Amendment challenges in his first and second assignments of error because they are premised upon events that occurred prior to the entry of his guilty plea, and he does not assert that these events affected the validity of his plea.

{¶ 15} Moreover, even if Darling had not waived these challenges, the Sixth Amendment right to choice of counsel is not implicated here, nor can we assign error because Darling's first retained attorney voluntarily withdrew before the state's motion was ruled upon by the trial court. *See United States v. Dansker,* 537 F.2d 40, 64 (3d Cir.1976) (declining to consider a Sixth Amendment claim where defense counsel voluntarily withdrew from the case before a hearing on alleged conflicts could be held); *Gover v. Vasbinder,* E.D.Mich. No. 2:06-CV-15184, 2009 U.S. Dist. LEXIS 129527, 142 (June 26, 2009) (noting that neither petitioner nor the court were able to find a single case suggesting that a defense counsel's voluntary withdrawal from a case alone implicates the Sixth Amendment right to choice of counsel).

{¶ 16} Accordingly, the first and second assignments of error are overruled.

ECF Doc. 6-1 at 290-92.

C.  **Appeal to the Ohio Supreme Court, Case No. 2017-1497**

On October 24, 2017, Darling, through new counsel, filed a notice of appeal to the Ohio Supreme Court. ECF Doc. 6-1 at 303-04. Darling's memorandum in support of jurisdiction raised two propositions of law:

I.  A defendant has been denied his sixth amendment right to choice of counsel whe[n] through manipulation by the prosecutor's office defense counsel withdraws and defendant was required to be represented by court-appointed counsel.

II. A defendant's plea of guilty does not preclude an appeal of the merits of his sixth amendment claim which voids the entire proceedings.

*Id.* at 306, 313-15. On March 14, 2018, the Ohio Supreme Court declined jurisdiction. *Id.* at 343. Darling did not appeal to the United States Supreme Court.

9

**II.     Law and Analysis**

    **A.     AEDPA Review**

"Federal habeas review . . . exists as 'a guard against extreme malfunctions in the state criminal justice systems" and is not simply an extra layer of appellate review. *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). Only when the petitioner fairly presented his federal claims in state court but the state courts did not reach the merits of those claims, may the federal habeas court review his claims *de novo*.[5] *Gumm v. Mitchell*, 775 F.3d 345, 360 (6th Cir. 2014). When the state courts decided the petitioner's federal claims on the merits, however, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs. *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

AEDPA imposes a highly deferential standard that requires federal courts to give state courts the benefit of the doubt. *Lindh*, 521 U.S. at 333 n.7; *Renico v. Lett*, 559 U.S. 766, 773 (2010). Under AEDPA, habeas relief is available only when the petitioner shows that the state-court decision was: (1) contrary to, or an unreasonable application of, clearly established federal law; or (2) an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d); *see also Cullen v. Pinholster*, 563 U.S. 170, 185 & n.7 (explaining that "evidence introduced [for the first time] in federal court has no bearing on" habeas review). "Reasonableness" is not a measure of the federal court's confidence in the state court decision; rather, it is an objective standard measuring whether the decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any reasonable possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011). "Clearly established federal law" includes only the governing legal principles

---

[5] *De novo* here simply means the court would take a fresh look at the issue, and not be limited in its review by an earlier finding by another court. *See Gumm*, 775 F.3d at 360.

established by the U.S. Supreme Court at the time the state-court decision was issued. *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003); *see also White v. Woodall*, 572 U.S. 415, 420 (2014) ("Clearly established federal law . . . includes only the holdings, as opposed to the dicta of [the Supreme] Court's decisions."). And state court factual determinations are presumed correct, unless the petitioner produces clear and convincing evidence showing that the state court made a clear factual error. *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003); *Burt v. Titlow*, 571 U.S. 12, 18 (2013); 28 U.S.C. § 2254(e)(1). "This standard . . . is difficult to meet." *White*, 572 U.S. at 419 (quotation omitted).

      **B.**       **Sixth Amendment – Choice of Counsel**

The sole claim in Darling's petition alleges that Darling "was denied his [Sixth Amendment] right to counsel of choice whe[n] the office of the prosecuting attorney [interfered] with this right and required that petitioner be represented by a court-appointed counsel." ECF Doc. 1 at 5. Warden Lazaroff responds that Darling's claim must be denied because: (1) his unchallenged and valid guilty plea waived any non-jurisdictional constitutional defects preceding his plea; and (2) Darling's claim is meritless because DeFranco voluntarily withdrew and only in an earlier case which was previously dismissed. ECF Doc. 6 at 16-17. Darling's traverse asserts that his guilty plea did not waive his claim because: (1) the right to counsel of choice is a "deeply imbedded" right under the Sixth Amendment to U.S. Constitution; and (2) he only entered his plea after he "was forced to be represented by court-appointed counsel and his own hired counsel was unable to represent him due to the machinations by the prosecutor's office." ECF Doc. 7 at 6.[6]

---

[6] Darling's traverse also appears to argue – for the first time – that the Ohio Court of Appeals violated his rights by "ignor[ing]" his claim based on his guilty plea. ECF Doc. 7 at 8-10. However, a petitioner forfeits any argument not presented in the petition, even when he raises it for the first time in his traverse. *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) ("Because the . . . argument was first presented in

11

The Sixth Amendment to the U.S. Constitution's guarantee of the assistance of counsel includes "the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). However, "the right to counsel of choice 'is circumscribed in several important respects.'" *Id.* (quoting *Wheat v. United States*, 486 U.S. 153, 159 (1988). "'Courts have the power and duty to disqualify counsel whe[n] the public interest in maintaining the integrity of the judicial system outweighs the accused's constitutional right.'" *Wheat*, 486 U.S. at 158 n.2 (quoting *Roe v. United Sates*, 475 U.S. 1108 (1986)). For example, the presumption in favor of a defendant's chosen attorney "'may be overcome not only by a demonstration of actual conflict [of interest] but [also] by a showing of a serious potential for conflict.'" *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1351 (6th Cir. 1993) (quoting *Wheat*, 486 U.S. at 164). Moreover, "'[a]n indigent defendant has no right to have a particular attorney represent him.'" *See United States v. Saldivar-Trujillo*, 380 F.3d 274, 277 (6th Cir. 2004) (quoting *United states v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990)).

1. **Jurisdiction**

Neither Darling nor Warden Lazaroff has addressed the very large elephant in the room the court must always start with – *i.e.*, subject matter jurisdiction. The court must raise the issue of subject matter jurisdiction *sua sponte*[7] when appropriate. *Norris v. Schotten*, 146 F.3d 314, 324 n.5 (6th Cir. 1998); *see also Brown v. Harris*, No. 3:17-cv-80, 2018 U.S. Dist. LEXIS 57923, at *58 (S.D. Ohio Apr. 5, 2018) ("[T]he absence of subject matter jurisdiction in a federal court must be raised *sua sponte* by the Court, even if none of the parties does so." (citing

---

[petitioner's] traverse rather than in his habeas petition, it was not properly before the district court, and the district court did not err in declining to address it.").

[7] *Sua sponte* means the court must consider the issue on its own "motion."

12

*Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908))). Thus, before this court may proceed to consider Darling's claim, it must first ask whether a federal court may entertain a state prisoner's attempt to use an alleged constitutional violation in a case dismissed without prejudice to attack his conviction in a different case brought upon a new indictment.

The answer is no. Federal courts have subject matter jurisdiction to "entertain an application for writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States*." 28 U.S.C. § 2254(a); *Eddleman v. McKee*, 586 F.3d 409, 412-13 (6th Cir. 2009) (noting that § 2254(a) restrains federal courts' subject matter jurisdiction). This provision requires that there be some nexus between the alleged constitutional violation and the attacked conviction, pursuant to which the petitioner is "in custody." *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("It is clear . . . that the essence of habeas corpus is an *attack* by a person in custody *upon the legality of that custody*, and that the tradition function of the writ is *to secure release from illegal custody*." (emphasis added)); *see also Storm v. United States Parole Comm'n*, No. 4:06-cv-2458, 2007 U.S. Dist. LEXIS 7441, at *5-6 (N.D. Ohio Feb. 1, 2007) (A petitioner's "custody must be the result of the respondent's action from which he seeks' habeas corpus relief." (citing *Brown v. Wainwright*, 447 F.2d 980 (5th Cir. 1971) (finding no jurisdiction when the petitioner did "not contend that there is a relationship between the present sentence and the sentence under attack")))); *Bailey v. Hill*, 599 F.3d 976, 980 (9th Cir. 2010) ("Section 2254(a)'s language permitting a habeas petition to be entertained 'only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States,' . . . explicitly requires a nexus between the petitioner's claim and the unlawful nature of the custody." (brackets in original) (emphasis omitted)); *Diaz v. Fla. Fourth Judicial Circuit*,

683 F.3d 1261, 1264 (11th Cir. 2012) ("A federal habeas petitioner must be 'in custody under the conviction or sentence under attack at the time his petition is filed."); *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989) (holding that a similar, pre-AEDPA provision under 28 U.S.C. § 2241 "requir[ed] that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed.").

No such nexus exists here. Even if this court were to assume that the state's motion to disqualify defense counsel violated Darling's Sixth Amendment right to choice of counsel, Darling cannot show that the alleged violation in Case No. CR-15-599133 had any nexus to his conviction in Case No. CR-15-602351. These were two separate cases, brought upon two separate indictments. And he is not "in custody" pursuant to the dismissed indictment in Case No. CR-15-599133. *Cf. Howard v. Warden*, 776 F.3d 772, 776 (11th Cir. 2015) (dismissing a 28 U.S.C. § 2241 petition when, *inter alia*, the petitioner was not "in custody" pursuant to a dead-docketed indictment). Moreover, Darling does not allege, and the record does not indicate, that he *ever* sought to hire DeFranco to represent him in Case No. CR-15-602351.[8] *See generally* ECF Doc. 1; ECF Doc. 7. Instead, the record shows that Darling sought and was granted court-appointed counsel in Case No. CR-15-602351. Thus, because there is no nexus between Darling's alleged constitutional violation and the conviction pursuant to which he is in custody, this court has no jurisdiction to entertain his claim under 28 U.S.C. § 2254(a).

And this result makes sense. The nexus requirement is related to a broader concept controlling when courts may act: standing. *Cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555,

---

[8] Conceivably, Darling *could* argue that seeking to hire DeFranco to represent him in Case No. CR-15-602351 would have been futile in light of the state's motion in Case No. CR-15-599133 and DeFranco's decision to withdraw voluntarily. But Darling's counseled petition and traverse make no such argument, and this Court will not construct it for him. *See Tyler*, 416 F.3d at 504 (indicating that arguments not presented in the petition are waived). And the claim would still be waived and meritless, as discussed in Section II.B.2, *infra*.

560-61 (1992) (Standing requires three elements: (1) an injury in fact, that is neither conjectural or hypothetical; (2) a "causal connection between the injury and the conduct complained of; and (3) "that the injury will be redressed by a favorable decision"). After all, what is the remedy for a constitutional violation in a dismissed case – a case that *did not* result in the petitioner's judgment of conviction? Even when a federal court grants a writ of habeas corpus and vacates a judgment tainted by a constitutional violation, nothing precludes the state from seeking a new conviction based on the same offenses. *Cf. Eddleman*, 586 F.3d at 412-13 ("[I]n a typical case where a prisoner's conviction is vacated 'because the state fails to retry [him] by the deadline set in a conditional writ, "*the state is not precluded from rearresting petitioner and retrying him under the same indictment*."'" (emphasis and brackets in original)). Because there was no judgment in Case No. CR-15-599133 and because the state was free to prosecute Darling in a new case, a finding that a constitutional violation occurred in Case No. CR-15-599133 would be without remedy in habeas corpus. *Id.* ("The power to 'release' a prisoner under § 2254 . . . is the power . . . only to release him from custody pursuant to [an] unconstitutional judgment.").

Because Darling's sole claim has no nexus to the conviction pursuant to which he is in custody, this court does not have subject matter jurisdiction to consider the petition under 28 U.S.C. § 2254(a). I recommend that Darling's claim be dismissed for lack of subject matter jurisdiction.

### 2. Waiver and Merits

Even if the court were to assume for the sake of argument that we had jurisdiction over Darling's claim, the claim would still founder because it was both waived and meritless. The Ohio Court of Appeals correctly noted that the U.S. Supreme Court has held that, "'[w]hen a criminal defendant has [pleaded guilty], he may not thereafter raise independent claims relating

15

to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.'" ECF Doc. 6-1 at 291 (quoting *Tollett v. Henderson*, 411 U.S. 252, 267 (1973)); *see also Werth v. Bell*, 692 F.3d 486, 495 (6th Cir. 2012) ("[A]fter the entry of an unconditional guilty plea, the defendant may challenge only the court's jurisdiction and the voluntary and intelligent character of the plea itself."). As was the case in the Ohio courts, Darling's guilty plea waived the Sixth Amendment claim he now seeks to raise on habeas review. *Tollett*, 411 U.S. at 267; *Werth*, 692 F.3d at 495. And, even without a habeas waiver, there can be no doubt that the Ohio Court of Appeals reasonably applied the U.S. Supreme Court's decision in *Tollett* in concluding that the claim was waived by the guilty plea. ECF Doc. 6-1 at 291; *Tollett*, 411 U.S. at 267. This waiver applies even when, as here, the alleged constitutional error concerns the petitioner's "deeply imbedded" rights under the Sixth Amendment to the U.S. Constitution.[9] *See United States v. Stiger*, 20 F. App'x 307, 308-09 (6th Cir. 2001) (holding that a defendant waived his ineffective-assistance-of-counsel claim under the Sixth Amendment when he pleaded guilty).

Moreover, the Ohio Court of Appeals reasonably concluded that, even if it found Darling had not waived his choice-of-counsel claim, it would be meritless because DeFranco voluntarily withdrew before the trial court could rule upon the state's motion to disqualify. ECF Doc. 6-1 at 292 (citing *United States v. Dansker*, 537 F.2d 40, 64 (3d Cir. 1976) (rejecting a claim that the government and trial court "forced" a defendant's attorney out of the case when counsel had voluntarily withdrawn before the court could rule on the government's motion asserting a conflict of interest)); *see also Wheat*, 486 U.S. at 159 ("[A] defendant may not insist on

---

[9] It is noteworthy that Darling has not – whether before the Ohio Court of Appeals on direct appeal or before this court on habeas review – asserted that DeFranco's withdrawal as counsel *resulted in* or otherwise affected the voluntariness of Darling's decision to plead guilty. *See generally* ECF Doc. 1; ECF Doc. 7; ECF Doc. 6-1. Likewise, Darling has not asserted on habeas review any claim alleging that DeFranco rendered constitutionally ineffective assistance when he decided to withdraw. *See* ECF Doc. 1; ECF Doc. 7. Thus, any such claims are forfeited. *Tyler*, 416 F.3d at 504.

16

representation by an attorney he cannot afford or who for other reasons declines to represent the defendant."); *Grover v. Vasbinder*, No. 2:06-cv-15184, 2009 U.S. Dist. LEXIS 129527, at *141-42 (E.D. Mich. Jun. 26, 2009) (denying petitioner's claim that his right to choice of counsel was violated when counsel was permitted to withdraw).

Moreover, Darling never has addressed in this court (or apparently in the Ohio Court of Appeals) what happened to his *second* retained counsel. As the Ohio Court of Appeals noted:

> The trial court granted the first attorney's motion to withdraw . . . without objection from the state or Darling. The second attorney Darling had retained remained as his counsel. The state then withdrew its motion to disqualify counsel as it related to counsel for Darling, Buckner, and Crawford.

ECF Doc. 6-1 at 287. *State v. Darling*, Eight Dist. Cuyahoga No. 104517, 2017-Ohio-7603 at ¶ 5. And the court noted:

> Although the docket does not reflect when or why, it is clear that at some point the second retained attorney ceased his representation of Darling. An assistant Cuyahoga County public defender was appointed to represent Darling in the present, reindicted case. On January 28, 2016, the state filed a motion to dismiss CR-15-599133-A without prejudice, which the trial court granted the next day.

ECF Doc. 6-1 at 287. If Darling discharged his second attorney or was no longer able to afford to retain his services, or if that attorney voluntarily withdrew – facts about which we may not speculate – Darling's ability to argue that the state's conduct toward Attorney DeFranco violated his Sixth Amendment rights vanishes. Darling has cited no law to support the proposition that an accused has a Sixth Amendment right to *two* lawyers of his choice. And if something other than the state's actions caused Darling to lose the ability to keep his second counsel, there could be no nexus between the state's action and Darling's loss of counsel of choice.

If the Court prefers to address Darling's claim on the merits despite the jurisdictional barrier, I recommend that the claim be denied as both waived and meritless.

17

### III. Certificate of Appealability

#### A. Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has interpreted this standard to mean that the "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

#### B. Analysis

When a petition is to be dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold. In such cases, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 485. As the Supreme Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id*. at 486. If the Court accepts my recommendations, Darling will not be able to show that the Court's dismissal of his improvident,

18

waived, and meritless claim is debatable. Thus, I recommend that a certificate of appealability not be issued.

## IV. Recommendation

Because Darling is not "in custody" pursuant to any judgment of conviction in Case No. CR-15-599133 – the case in which the alleged constitutional violation occurred – I recommend that Darling's sole claim be DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION and that his petition (ECF Doc. 1) be DENIED. I further recommend that Darling not be granted a certificate of appealability.

Dated: February 19, 2020

Thomas M. Parker
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).